**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JENNIFER JOHNSON,

          Plaintiff,

          v.

JOHN STUDDIFORD,

          Defendant.

Civil Action No. 22-7470 (MAS) (DEA)

**MEMORANDUM ORDER**

**SHIPP, District Judge**

This matter comes before the Court on Defendant John Studdiford's ("Studdiford") Motion to Dismiss. (ECF No. 4.) Plaintiff Jennifer Johnson ("Johnson") opposed (ECF No. 7), and Studdiford replied (ECF No. 8). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Johnson's complaint is dismissed without prejudice.

In or around 2003, Johnson entered into business with Studdiford when she agreed to become "Employee #2" in his new company, CC Ford Marketing Group LLC ("CC Ford Marketing"). (Compl. ("Secondary Case Compl.") ¶ 15, ECF No. 1.)[1] Johnson understood CC Ford Marketing as being "owned and capitalized by [Studdiford]." (*Id.*) Johnson remained

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Secondary Case Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

employed by CC Ford Marketing until 2013, at which time the company changed its name and reconstituted itself as CC Ford Group LLC ("CC Ford Group"). (*Id.* ¶ 16.)

By 2013, Johnson had developed a strong roster of clients. (*Id.* ¶ 22.) One of these clients, Allergan, recruited and offered Johnson a Vice President position. (*Id.*) Studdiford became aware of Allergan's offer, and in order to persuade Johnson to remain employed with him, Studdiford offered to create a new entity, CC Ford Group West LLC ("CC Ford West"), where Johnson could service her existing clients and would be made a partner. (*Id.* ¶ 23.) Johnson turned down the offer from Allergan in order to pursue the partnership with Studdiford through the newly created CC Ford West. (*Id.* ¶¶ 24, 34.) Johnson accepted Studdiford's offer with an understanding that an equal partnership existed between Studdiford and herself. (*Id.* ¶¶ 25, 39.) Under Studdiford and Johnson's oral agreement, Johnson was entitled to a 50% membership interest in CC Ford Group West. (*Id.* ¶ 41.) Johnson believed that this arrangement was generous to Studdiford because Johnson was responsible for much of CC Ford Group's success. (*Id.* ¶ 25.)

Over the next few years, Studdiford made consistent profit-share payments to Johnson, which he told her accounted for 25% of the profits of the company. (*Id.* ¶ 28.) Johnson was unable to verify whether these payments actually amounted to 25% of the profits because Studdiford refused to provide Johnson with detailed information on CC Ford West's financials. (*Id.* ¶ 27.) Johnson believes that the payments were "false and misleading." (*Id.* ¶ 30.) In spite of frequent requests from Johnson, Studdiford refused to create any written partnership agreement with Johnson. (*Id.* ¶ 29.)

In December 2021, Johnson prepared to have a buyout discussion with Studdiford so that she could leave CC Ford West. (*CC Ford West, LLC v. Johnson*, No. 22-4143, Am. Compl. ¶ 33 ("Primary Case Am. Compl."), ECF No. 9.)  At that time, Johnson believed that she generated

2

"100% of the enterprise value" of CC Ford West. (*Id.* ¶¶ 33-34.) When Johnson approached Studdiford about a possible buyout, he reacted in an aggressive and negative manner, telling Johnson that "what she really needed to do was work much harder for three more years, and strategize with him on how to sell CC Ford West so that [Johnson] could reap the benefit of a sale." (*Id.* ¶ 34.) Johnson understood this statement to mean that Studdiford acknowledged Johnson's alleged ownership interest in CC Ford West. (*Id.*) Studdiford was unwilling to move forward in buyout negotiations, so Johnson decided that "her only available option [was] to leave" CC Ford West. (*Id.* ¶ 36.) Accordingly, in March 2022, Johnson resigned from CC Ford West. (Primary Case Am. Compl. ¶ 8.)

On December 22, 2022, Johnson filed a three-count complaint against Studdiford alleging breach of oral or implied contract, breach of fiduciary duty, and fraud (the "Secondary Case"). (*See generally id.*) Importantly, however, on September 20, 2022, in a separate and related case pending before this Court (the "Primary Case"), CC Ford West filed an eight-count amended complaint against Johnson and other defendants arising from the same basic controversy between the parties: Johnson leaving CC Ford West.[2] (*See generally* Primary Case Am. Compl.) As such, and for the reasons discussed below, the allegations against Studdiford in Johnson's Complaint in the Secondary Case should have been brought as a compulsory counterclaim in the Primary Case.

---

[2] Significantly, in the Primary Case, Johnson asserts three counterclaims against CC Ford West that are identical to the causes of action in the Secondary Case against Studdiford: breach of oral or implied contract, fraud, and breach of fiduciary duty. (Secondary Case Compl. ¶¶ 38-56; *CC Ford West, LLC v. Johnson*, No. 22-4143, Primary Case Answer & Countercls. ¶¶ 32-46, ECF No. 32.) In the Secondary Case, Johnson alleges that Studdiford compelled her to leave CC Ford West by breaching a partnership agreement between them, and in the Primary Case, CC Ford West alleges that Studdiford never agreed to make Johnson a member of CC Ford West. (*See generally* Compl.; Primary Case Am. Compl. ¶¶ 179, 189-98.) As such, the two matters also share specific factual disputes relating to whether a partnership existed between Studdiford and Johnson.

*See* Fed. R. Civ. P. 13(a); *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am.*, 292 F.3d 384, 389-92 (3d Cir. 2002).

Rule 13(a) of the Federal Rules of Civil Procedure[3] provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).

The Court finds that under the Third Circuit's ruling in *Transamerica*, the allegations in Johnson's Complaint in the Secondary Case should have been brought as compulsory counterclaims, not brought as an independent lawsuit. *See Transamerica*, 292 F.3d at 389-90. In *Transamerica*, the court found that a counterclaim is compulsory where it "bears a logical relationship to an opposing party's claim." *Id.* at 389. The *Transamerica* court emphasized that the terms "logical relationship" and "opposing party" have been viewed liberally to promote judicial economy. *Id.* at 389-90. A logical relationship between claims exists "where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'" *Id.* Importantly, the *Transamerica* court notes, "[s]uch a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, *or are offshoots of the same basic controversy between the parties.*" *Id.* at 390 (emphasis added). Under Rule 13(a), "transaction or occurrence" is also construed generously to further this purpose. *Id.*

Here, in the Primary Case, CC Ford West brought claims against Johnson for violating a non-competition agreement with CC Ford West, among other things. (Primary Case Am. Compl. ¶¶ 189-98.) Johnson counterclaimed in the Primary Case bringing claims for breach of oral or

---

[3] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

implied contract, fraud, and breach of fiduciary duty against CC Ford West. (Primary Case Answer & Countercls. ¶¶ 32-46.) Johnson's fraud counterclaim in the Primary Case expressly calls into question Studdiford's behavior while at CC Ford West and alleges that CC Ford West and Studdiford engaged in fraudulent misrepresentations pertaining to the partnership agreement that Johnson alleges Studdiford breached in the Secondary Case. (Primary Case. Countercls. ¶¶ 37-42.) As such, the question of whether Studdiford and Johnson created a partnership while at CC Ford West is at issue in both the Primary and Secondary Case. (*See generally* Secondary Case Compl.; Primary Case Am. Compl. ¶¶ 179, 189-98.) Accordingly, under *Transamerica*, the Court finds that the facts and questions of law in the Primary Case and Secondary Case are, at least in part, "offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 389-90.

It may be the case that Johnson felt compelled to bring the Secondary Case because Studdiford was not a named opposing party in the Primary Case. (*See generally* Primary Case Am. Compl.) Under *Transamerica*, however, Studdiford qualifies as an "opposing party" in the Primary Case for purposes of Rule 13(a). In *Transamerica*, this Circuit adopted a broad reading of "opposing party." *Transamerica*, 292 F.3d at 392. Specifically, the *Transamerica* court recognized that Rule 13(a) embodies the scope and rationale of the doctrine of claim preclusion, and therefore, "opposing party" should mirror the concept of parallel actors in res judicata. *Id.* As such, an "opposing party" under Rule 13(a) in this Circuit can be either a named party in a litigation *or* "those in privity with them." *See id.*

Privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within [the concept of] res judicata." *Tagayun v. Citibank, N.A.*, No. 05-4302, 2006 WL 5100512, at *4 (D.N.J. June 9, 2006) (citation omitted). "The Third Circuit has long recognized that privity is a legal conclusion; the privity

inquiry should be flexible enough to acknowledge the realities of the parties' relationships." *Id.* (internal quotation marks and citation omitted). This Court has adopted the guidelines provided by the Restatement (Second) of Judgments to understand the meaning of "privity." *See generally Mirza v. Miller*, No. 11-2192, 2012 WL 3201404, at *6 (D.N.J. Aug. 2, 2012). This Court explained:

> The Restatement provides that generally, a judgment in an action to which a corporation is a party has no preclusive effect on a person who is an officer, director, stockholder, or member of a non-stock corporation. [There is an exception, however,] if the corporation is closely held, the Restatement provides[:]
>
> . . .
>
> (3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:
> (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue.

*Id.* at *6-*7 (citing Restatement (Second) of Judgments § 59(3)(a)).

Based on the Restatement (Second) of Judgments, therefore, if a person (1) is a holder of a corporation's ownership, (2) is one of a few people to hold substantially the entire ownership of that corporation, and (3) actively participated in the action on behalf of the corporation, he is in privity with that corporation. *See id.* at *7 (concluding that since a defendant was the primary owner of a closely held corporation, and that the defendant signed the contract that gives rise to the controversy, he "actively participated" in the action and was therefore in privity with the corporation).

Under the test set forth above, Studdiford is in privity with CC Ford West for purposes of Rule 13(a). *First*, Studdiford appears to have a substantial ownership interest in CC Ford Group–the parent company of CC Ford West. (*See* Secondary Case Compl. ¶¶ 14, 15, 19, 20.) *Second*, Studdiford appears to solely or jointly own CC Ford West, where it is alleged that Studdiford created the corporation to encourage Johnson to decline Allergan's job offer and where Johnson believes she shared a 50% membership interest with Studdiford in CC Ford West. (Secondary Case Compl. ¶¶ 23, 39; *see also* Primary Case Am. Compl. ¶ 180 (suggesting Studdiford was the sole party holding a membership interest in CC Ford West where CC Ford West alleges "that only Studdiford took any risk when starting [CC Ford West]").) *Finally*, as previously eluded to, Studdiford is regularly mentioned in CC Ford West's Amended Complaint in the Primary Case as a significant actor dealing with Johnson, and there is no reason for the Court to believe that Studdiford is not intimately involved in CC Ford West's lawsuit. (*See generally* Primary Case Am. Compl.) For these reasons, Studdiford is in privity with CC Ford West, and as such, Johnson's allegations in the Secondary Case should have been brought as compulsory counterclaims in the Primary Case.

Although the Court finds that Johnson failed to bring her Complaint in the Secondary Case as compulsory counterclaims in the Primary Case, the Court will not foreclose Johnson from bringing her allegations against Studdiford. Instead, the Court interprets Johnson's initiation of this lawsuit as her attempt to bring her compulsory counterclaims against Studdiford, albeit through the wrong procedural mechanism: the filing of a new lawsuit. Johnson is, accordingly, granted leave to file an Amended Counterclaim in the Primary Case, incorporating her allegations

against Studdiford in his individual capacity where she sees fit.[4] To accommodate this filing, the Court will dismiss this matter without prejudice, and close this case.

For the reasons outlined above,

**IT IS** on this *12th* day of July 2023, **ORDERED** as follows:

1.  Johnson's Complaint (ECF No. 1) is dismissed without prejudice.

2.  Johnson shall file amended counterclaims in the Primary Case within 10 days of this order.

3.  The Clerk's Office is instructed to close this case.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court notes that Plaintiff may need to parse out what claims are brought against Studdiford individually and what claims are brought against CC Ford West. While Studdiford and CC Ford West are in privity for purposes of Rule 13(a), the Court makes no finding as to whether Johnson's claims against CC Ford West and Studdiford necessarily apply to both parties.